## Case No. 15,187.

### UNITED STATES v. GARDNER.

[18 Int. Rev. Rec. 46; 5 Chi. Leg. News, 501; 5 Leg. Op. 95.]

Circuit Court, N. D. Georgia. March 17, 1873.

JURORS IN FEDERAL COURTS—QUALIFICATIONS—MODE OF SELECTION—STATE LAWS.

[1. The provision in the act of July 20, 1840 (5 Stat. 394), that jurors in the federal courts shall have the same qualifications and exemptions as jurors in the state courts, and shall be designated in the mode practiced in the state courts, does not require that jurors, to serve in the federal courts, shall be designated or selected by the state officers, but they may be selected by the national officers, as nearly as may be, in the same manner as they are selected by the state officers.]

[2. Neither the act of 1789 (1 Stat. 73), nor the act of 1840, in respect to the selection of jurors for federal courts, fix the number of jurors to be selected, but leave the matter in the discretion of the court, to be determined by rule, if the court deems it best to make a rule on the subject.]

[3. The act of June 1, 1872 (17 Stat. 196), which declares that the federal courts shall conform, as near as may be, to the practice, pleadings, and modes and forms of proceeding prevailing in the state courts, has no reference to the designation or selection of jurors.]

[This was an indictment against William Gardner for alleged violation of the revenue laws. Heard on motion to quash the array of jurors.]

L. J. Gartrell, Peeples & Howell, and B. H. Hill, for challenger.

Mr. Farrow, U. S. Atty., Mr. Stone and Mr. Thomas, U. S. Asst. Attys., and Mr. Akerman, for the United States.

ERSKINE, District Judge. Before the perusal of the panel, composed of six white persons and six colored, defendant challenged the array on the ground that the jury was illegally constituted, and moved that it be quashed: "First—Because the United States jurors are required to be selected by the United States statutes, according to the laws of each state where said United States courts are held. Secondly—Because there is no authority of law for the United States court to appoint commissioners to select jurors. Thirdly—Because the rules of court under which said jury was selected and impanelled, limits the number of jurors to five hundred. Fourthly—Because the manner of selecting jurors heretofore practised by the United States courts in this state, has not been repealed by competent authority. Fifthly—Because the rule of court under which the said panel of jurors was drawn, selected, summoned, and impanelled is without sanction of law, and contrary to the statutes of the United States in such case made and provided. Sixthly—Because said panel of jurors was not drawn, selected and summoned according to law. (Signed) Gartrell & Stevens, Peeples & Howell, Defendant's Attorneys." Other objections—corollaries from the foregoing, were advanced during the arguments.

These authorities were cited and relied upon by counsel for challenger: Code, §§ 3842, 3858, and 3859; Const. Ga. art. 5, § 13; Act Feb. 15, 1869; 1 Brightly, 4 Dig. 220; Act Cong. July 20, 1840 [5 Stat. 394]; U. S. v. Woodruff [Case No. 16,758]; U. S. v. Wilson [Id. 16,737]; Clinton v. Englebacht, 13 Wall. [80 U. S.] 434; Act Cong. June 1, 1872 [17 Stat. 196]. The second paragraph of section 13, art. 5, of the state constitution of 1868, says: "The general assembly shall provide by law for the selection of upright and intelligent persons to serve as jurors. There shall be no distinction between the classes of persons who compose grand and petit juries." The third sentence refers to the compensation of jurors. On the 15th of February, 1869, the general assembly passed an act to carry this clause into effect. This act contains eighteen sections—I will give the substance of so much of it as is pertinently applicable to the subject now before the court. It makes it the duty of the ordinary of each county, together with the clerk of the superior court, and three commissioners appointed for each county by the judge of the superior court, to meet at the court-house on the first Monday in June, biennially, to select from the book of the receiver of tax-returns "upright and intelligent

persons" to serve as jurors, and to make out tickets, with the names of the persons so selected, and place them in a box, which shall be locked and sealed by the judge. And no grand or petit jury shall be drawn but in the presence of the judge in open court. But (by section 3) if the judge should fail to draw juries, then the ordinary, together with the commissioners and clerk of said county, shall meet at the court-house, within a certain time, and there draw grand and petit juries, all of which shall be entered by the clerk on the minutes of the court and signed by the ordinary.

On reading the act just referred to, and which is entitled "An act to carry into effect the second clause of the 13th section of the 5th article of the constitution," will disclose the fact that although it provides that the persons selected to serve as jurors shall be "upright and intelligent," (using the words of the constitution;) yet it does not speak of the second sentence, which declares: "there shall be no distinction between classes of persons who compose the grand and petit juries." Was this a casus omissus? Looking to the title of the act, there would appear to be some possible ground for this. But does not this very sentence carry itself into effect without legislative aid? Is it not per se operative and to be obeyed; and was not this probably the opinion of the legislature? My mind has always been impressed, with reasons too cogent to be discarded, that, notwithstanding the omission, it was the purpose of the legislature, by this enactment, to carry the entire clause into effect, and not to give force to a part only.

During the first term of this court, after its organization, in framing the jury rule (to be considered presently) the substance of the second sentence was incorporated into it. If this sentence is dormant, and requires legislation to bring it into action, then I may inquire, was the embodying of the substance of the sentence in the rules of court, going beyond the pale of the act of February 15, 1869 —giving to it a too elastic construction? If the practical working of the act, in this judicial district, until the making of the rule just alluded to, is to be the guide, it would be difficult, I apprehend, to answer this question in the negative.

By a rule of the United States district court (having circuit court jurisdiction) for this district, adopted at the March term 1871, the marshal was instructed to procure from the superior court clerk for each county, comprising this district, a certain number of names of the "most upright and intelligent persons," between the ages of twenty-one and sixty years, to be taken from the jury lists of the county, without regard to race or color. Comment was made by counsel on both sides, during argument, on the insertion of the word "most" before and in connection with, "upright and intelligent," in the rule of the district court. Whether the word "most" was in the draft of

the rule which I wrote, I do not now remember; if so, it was unadvisedly there. But what impediment could it have been to justice? Can either side complain? Was not the word, by fair intendment, to apply to each class, white and colored? At most the word but expressed moral fitness as necessary to the end proposed. But to return; nearly seventeen hundred names were forwarded to the marshal (before the abrogation of this rule) by these clerks, who responded to his request, and for which the government paid them. While this rule was of force, more than two hundred and fifty names were drawn from the jury box by the court, or its officers, the marshal and clerk; but strange as it may appear, every ballot drawn from the box contained the name of a white person. Now, as the ratio of the classes, in this judicial district, has been for years past, as eight white to five colored, or nearly so, it is obvious to the common mind that this mode of designating, or selecting the jurors, cast the entire burden of jury service in the federal court upon one of the classes only—white citizens; thus releasing colored citizens, who possessed the constitutional qualifications for jurors, from the performance of a duty, which they, equally with the qualified white citizens, owed to their country. Not only the constitution of this state, but the recent amendments to the national constitution, have made the colored man a citizen, habilitating him with all the rights, privileges and immunities enjoyed by the white citizen; therefore, he should perform his part of the public labor. On the 1st of June, 1872 [17 Stat. 196], congress passed an act taking away the circuit court power from the district court for this district, and establishing a separate circuit court. At the first term a rule of court was adopted, and it was under this rule that the persons now in the traverse jury-box were designated, summoned, and impanelled. But before passing to this rule it may not be wholly amiss to mention that it is a copy—mutatis mutandis—of the rule which met the sanction of, and was adopted by the United States circuit court for the Southern district of this state, at the last November term. The court was composed of WOODS, Circuit Judge, and ERSKINE, District Judge.

"Order of Court Amending Jury Rules. The court shall appoint three of the United States commissioners residing in the Northern district of Georgia, and the said commissioners, with the marshal for the district of Georgia and the clerk of the court, shall, within ten days after the adjournment of this court, select from the body of the Northern district of Georgia five hundred upright and intelligent persons, citizens of said district, between the ages of 21 and 60 years, without regard to race, color, or previous condition, to serve as jurors. And the clerk of the district and circuit courts for said district and the marshal shall place the names of the persons so selected in a box,

from which they shall draw, within ten days after said names are so deposited, not less than forty-five nor more than fifty names, unless otherwise ordered by a judge, to serve as jurors in the circuit court, and not less than forty-five nor more than fifty names, unless otherwise ordered by the judge, to serve as jurors in the district court. And the first twenty-three names so drawn for each court shall be the grand jurors for such court unless the court or a judge shall otherwise order. And within thirty days after each succeeding term of said courts respectively, unless previously drawn by the court, it shall be the duty of the marshal and clerk to draw from said box, in the manner before stated. the same number of jurors to serve at the next succeeding term of said courts respectively, unless the number is changed by the judge. And if, from any cause, they are unable to procure from the district. as before required, the requisite number of qualified jurors, then, in that event, the names of those they have been able to obtain shall constitute the list from which said jurors shall be taken, and the names of those so drawn shall be placed in another compartment of said box, there to remain until all the names shall have been drawn from the first compartment. The said box shall be kept locked, except when opened for the purpose of drawing or revising the list, and the clerk shall keep the box and the marshal the key. If from failure to draw, as hereinbefore directed, or from any other cause, there shall be a deficiency in whole or in part, of regular jurors, the court may order that upright and intelligent persons from the body of the district shall be forthwith summoned as jurors or talesmen, as the case may be. If the court should not sit at any term, the jurors drawn for that term shall stand over for the next term that shall be held. The marshal shall summon jurors by delivering to each personally, or by leaving it at his usual residence, a written or printed summons. The marshal, the clerk, and any one of said commissioners shall constitute a quorum for the purpose of carrying into effect this rule. And a deputy marshal may. in any case, whether in selecting or drawing jurors, or otherwise in the premises embraced in this rule, do whatever the marshal may himself do.—December 16, 1872."

Amendment December 23, 1872. "Ordered—That the name of each juror selected in conformity to said rule, be written in full, together with the county of his residence, on a separate piece or slip of paper, and also entered on a book to be kept by the clerk of said court. Each ballot shall be so rolled that neither the name nor the county can be seen. The ballots shall then be placed in the box and thoroughly mixed. and when a ballot is drawn therefrom by the court, or by the officers appointed to draw, it shall be unrolled, read, and entered on the venire, or on a paper to be attached thereto."

Attention will be directed to the act of July 20, 1840 (5 Stat. 394): (1) "Jurors." says the act, "to serve in the courts of the United States, in each state respectively, shall have the like qualifications, and be entitled to the like exemptions as jurors of the highest court of law of such state now have and are entitled to, and shall hereafter from time to time have and be entitled to, (2) and shall be designated by ballot, lot, or otherwise, according to the mode of forming juries now practised and hereafter to be practised therein,. in so far as such mode may be practicable by the courts of the United States, or the officers thereof; (3) and for this purpose the said courts shall have power to make all necessary rules and regulations for conforming the designation and impanelling of juries in substance, to the laws and usages now in force in such state; (4) and further, shall have power, by rule or order, from time to time, to conform the same to any change in these respects which may be hereafter adopted by the legislatures of the respective states for the state courts."

For convenience in the endeavor to interpret and construe this act, the clauses have been marked 1, 2, 3, 4.

1. The qualifications of jurors, as mental capability, residence, age, etc. The second section of the first article of the constitution says: "All persons born in the United States and residents of this state are hereby declared to be citizens of this state." The requisite qualifications for persons to serve as jurors in the highest courts of law of this state, as declared by its constitution and laws, are. that they be "upright and intelligent persons; that they have resided in the county for six months immediately before they are called upon to serve" as grand and petit jurors: that they are "above the age of twenty-one years and under the age of sixty years." Code, §§ 3841, 3858. No property qualification is required in this state for a juror, and if it is not a mere rule of convenience for ordinaries, clerks, and commissioners, to select jurors from the book of the receiver of tax returns, and it be a necessary qualification that the juror must be a tax-payer, then that qualification is included in the qualification of age. Acts March 18, 1869, and January 19. 1872. To be "white" was another qualification for a juror, but this no longer exists. It is unnecessary to speak here of exemptions, under the state laws, from jury duty in the state courts, for the principle is that those who are exempt from serving on juries are not thereby, unless there be some statutory regulations, or perhaps usage, disqualified from doing so. The language employed by congress in this clause of the act of 1840 is direct and posi-

tive; it is also mandatory to the federal courts—that jurors to serve therein shall have like qualifications and be entitled to like exemptions as those of the highest courts of law in the state where the national court is held. Under this clause no discretion is given to the court.

Clauses 2, 3, and 4 may be considered together. They provide for the designating or selecting of jurors by ballot, lot, or otherwise, according to the mode of' forming juries as practised in the state wherein the federal court is being held, so far as such mode may be practicable in said courts, or its officers giving the power to said courts to make all necessary rules and regulations for conforming and adopting the designation and impanelling of jurors, in substance to the laws and usages in force in the state at the time. Now, it was contended by counsel for the challenger that for the desig-nating or selecting of qualified persons to serve as jurors in this court, state authority—for example, a board, comprising the ordinary of the county, the superior court clerk, and also three commissioners appointed by the judge of the superior court—is the proper agency to act in the premises; that it, and not the national court or its officers, is the touchstore to discover, and the agent to designate each particular juror to serve in this court, from the list on the books of the receiver of tax returns. The employment of state agency to designate or select jurors for the United States courts was not, in my opinion, contemplated by congress in making this law. The language of the act is that the jurors "shall be designated by ballot, lot, or otherwise, according to the mode of forming juries now practised or hereafter to be practised therein, in so far as such mode may be practicable, by the courts of the United States or the officers thereof." Is it not the plain meaning of this that the designation or selection is to be made by the national and not the state officers? But the argument of counsel in its tenor indicated that, at least, if the officers of this court are to designate or select its jurors, the names should be taken from the list of taxpayers in each county in the district found on the tax receiver's books. If jurors, as the rule requires, are to be taken from the district at large, this would be virtually impracticable. And even if it were practicable to thus select them, I do not think the statute requires it to be done. The legal object is to select persons who possess the qualifications; it is not the mode in which this is to be accomplished that is imperative upon the court; in this matter a large discretion has been bestowed upon it by the statute itself. The act says that the court shall have the power to make all necessary rules and regulations for conforming the designation and impanelling of jurors, in substance, to the laws and usages in force in the state.

Objection to the rule was urged by counsel for the challenger, "because the rule of court under which the jury was selected and impanelled limits the number of jurors in this district to five hundred." I have looked into this question, and I find nothing in any of the laws of congress as to what number shall be designated or select-ed. The acts of 1789 [1 Stat. 73] and 1840 apply only to the mode of selecting jurors, and not to the number.

Counsel relied on the fifth section of the act of congress of June 1, 1872 (17 Stat. 196). This section declares (in substance) that the United States courts shall conform, as near as may be, to the practice, pleadings, and modes and forms of proceeding in other than equity and admiralty causes, as they may exist in like causes in the courts of record in the state at the time of holding the United States court therein. The act has no reference to the designating or selecting of jurors; nor in my opinion has it any application to the practice, pleadings, or modes of proceeding in criminal cases, as practised in the state courts.

The case of U. S. v. Wilson [supra] was read and earnestly discussed. Two questions were before the court for decision. The first was the construction of the act of July 20, 1840. Speaking of the first clause of the act. Wilson, Jr., said: "So far as relates to the qualifications and exemptions of federal jurors, the courts have no discretion." And in construing other portions of the act, which he quotes from, "and for this purpose the said courts shall have the power to make all the necessary rules, etc." to the end, the learned judge said, "the courts from necessity were to exercise a discretion as to the practicability of designating and impanelling jurors according to the mode prescribed for selecting juries of the highest court of law in the state. They have the power and the discretion to change the mode from time to time. The court may exercise the power, or refrain to exercise it, as it may now deem practicable." The other question for decision was, whether where a grand jury, consisting of fifteen members, fourteen of them—the fifteenth being absent —return a true bill into court; the indictment was well found. The court held it was. But it further held, that if a grand jury has even one disqualified person on the panel, the whole jury is tainted and an indictment found by such a body would be void. And this has been the doctrine as to grand juries in England for the past four hundred years, and it prevails in this country. 2 Pick. 549; Doyle v. State, 17 Ohio, 222.

Counsel also relied on Clinton v. Englebrecht, 13 Wall. [80 U. S.] 434. This case arose exclusively under a law of the territory of Utah. The court there, proceeding on the theory that it was a court of the United States, issued an open venire to the marshal,

acting apparently on the hypothesis that it was to be governed in the selection of jurors by the acts of congress. Chief Justice Chase, in delivering the opinion of the court, held that the territorial court erred both in its theory and in its action, and that the making up of the lists, and all matters connected with the designation of the juries, were subject to the territorial laws.

Reliance was likewise placed by counsel for the challenger on the case of U. S. v. Woodruff [supra]. The defendant objected to a trial, on the ground that the jurors had not been selected conformably to the act of congress of July 20, 1840. The court (Mr. Justice McLean), in delivering the judgment, said: "By an early rule of this court the clerk is required to issue a venire facias, commanding the marshal to summon twenty-four persons to serve as traverse jurors. * * * By the act of Illinois of the 3d of March, 1845, for the selection of jurors, it is made the duty of the county commissioners to select jurors. Now this court cannot call upon the officers of the state to do this duty, but we are bound to conform, as nearly as may be, to the state practice. The venire under the above rules leaves the selection of the juries to the marshal as his convenience shall permit. This does not, therefore, conform to the state practice. The jurisdiction of this court extends throughout the state; consequently the jurors should be selected from the state at large, and their names should be inserted in the venire. The court will therefore adopt a rule requiring the clerk and marshal to select the jurors from the state at large, previous to each term, and to conform in doing so as near to the state practice as may be practicable."

The case of U. S. v. Wilson, instead of showing that the rule is not in conformity to the laws of congress, is, to my mind, an authority which sustains its legality.

The case of U. S. v. Woodruff is so directly applicable, so fully covers the whole question, and so clearly supports the rule, that no other authority need be adverted to or invoked.

The motion to quash the array is overruled.